## BRAGG et al. v. GERSTEL.

### No. 11195.

Circuit Court of Appeals, Fifth Circuit.

April 24, 1945.

758

Chas. A. Morehead, Herbert U. Feibelman, and Thomas H. Anderson, all of Miami, Fla., for appellants.

R. R. Saunders and J. B. Patterson, both of Fort Lauderdale, Fla., and W. G. Ward and Clifton D. Benson, both of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Bids for all the race track assets of Hollywood Jockey Club, Inc., a bankrupt, were considered in open creditors' meeting, adjourned over twice for further consideration, whereupon that of James Donn, as trustee for Gulfstream Park Racing Assn., Inc., was recommended by Gerstel, trustee in bankruptcy, for acceptance as against one made by T. E. Bragg, who is connected with another race track. The referee, making a careful statement of his reasons, directed the acceptance of the Donn bid. Bragg and several creditors brought the matter for review before the judge, offering to make certain proofs as to Donn's connections with the Hornings, whose connection with the bankrupt will later appear. The judge held the offered proof would make no difference, and confirmed the referee's decision. Bragg and four creditors appeal. Of the four, one has dismissed his appeal. Another is a lien creditor whose lien is not affected by the sale, and who it is argued has no reason to appeal. The third creditor's appeal was in the name of Dulaney Vernay Company by its attorney at law named in the allowed proof of claim. It appears, however, that before the judgment appealed from was rendered the claim had been sold and transferred to another, and shortly after the appeal was taken was sold to George M. Gillett who in this court, appearing by the same attorney, moves to be substituted as appellant. Appellees resist this motion, asserting the appeal to be void. They also say that Bragg, as an unsuccessful bidder, has no standing to appeal, citing Certified Associates v. Foundation Properties, Inc., 2 Cir., 75 F.2d 286.

Bragg's bid was not made at an auction, or on terms fixed by the trustee or referee as those on which bids were to be received. The creditors' meeting was called to con-

sider Donn's Bid, which was to pay $100,-000 cash deposited with the trustee for a quitclaim from the trustee, the purchaser taking subject to all liens and uncertainties to be hereafter mentioned. Bragg in the adjourned creditors' meeting offered $610,-000 for a transfer of a lease, which was the principal asset, clear of liens and in good standing, putting the burden on the bankrupt estate of clearing up and adjusting everything. No deposit was made, though $100,000 in a certified check was offered. The bid not being on invited terms, nor at an auction where the highest and best bidder gets the property, we are not sure that Bragg, though he might well be heard by judge and referee who had full discretion, has any standing to appeal to this court and thus delay the closing of the bankruptcy. To say that every unsuccessful bidder for property of a bankrupt may thus appeal, though he really has no right in or to the estate, would set a bad precedent. Especially is this true where the bidder introduces his own basis of bidding. There is, however, no formal motion to dismiss Bragg's appeal. So we make no formal ruling.

■■■ As to the appeal of the secured creditor, for a like reason we make no formal ruling. Another creditor, Minton, seems to be uncriticised as an appellant, except that Bragg's counsel represent him. As to the claim of Dulaney Vernay Company, title to which seems to have changed several times since it was allowed with a named attorney designated to represent it, and who is still representing it, we are of opinion that its purchasers might allow it and its attorney to stand unchanged in the record, so long as their assignor made no objection. Before non-negotiable debts became freely assignable it was the practice for the assignee to use the assignor's name in court, and he was held to have a right to do so, on indemnifying the assignor against costs. We do not think the appeal thus taken by an authorized attorney in the name of the original creditor was void. Gillett, the present owner, is properly to be substituted in the record as the true litigant on his motion, thereby assuming directly the costs to which he may become liable. We thus have an appeal with at least two proper appellants.

The bankrupt, Hollywood Jockey Club, Inc., was organized to go into the racing business in 1937. It leased for twenty years, renewable for another ten years, a tract of land for substantial annual rentals, agreeing to erect thereon by Jan. 1, 1939, a race track, and all appropriate buildings, which were to become at once the property of the lessors, free of all liens; lessee to pay taxes and not assign or sublet the premises nor use them otherwise than as a race track; if the lessee should become insolvent or be adjudicated a bankrupt lessor to have at his option the irrevocable right to cancel the lease, and receipt of rent from any receiver or trustee not to affect this right. The Jockey Club erected the race track buildings and equipment at a cost of about a million dollars, a large part of which was unpaid, it owing its contractor and the contractor owing materialmen and subcontractors and architects, who filed liens against the property for more than $400,000. After a few days' operation on Feb. 11, 1939, the Jockey Club filed a petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., for composition of its debts. No plan was adopted, and the trustees appointed undertook to operate the race track. Their operation was unsuccessful, resulting in a large deficit. On Oct. 19, 1942, the Jockey Club was adjudicated a bankrupt and appellee Gerstel made trustee. The assets included no cash, $10,000 worth of vehicles and paraphernalia, and the lease. The claims filed were $861,537 unsecured, $566,695 secured by liens, and $16,147 having priority.

The contractor who built the race track was a corporation operated by one J. C. Horning. Many of the subcontractors and materialmen required the personal guarantee of Horning and his mother, Mrs. Marie Horning, persons of wealth. Though not original stockholders of the Jockey Club nor interested in the real estate at the time of its lease, the Hornings became interested in the enterprise and bought up a majority of the capital stock, and Mrs. Horning in 1938 purchased the title to the land subject to the lease, thus becoming the landlord. At the time of the bankruptcy adjudication the Hornings, by taking up the debts they had guaranteed and by purchasing others, owned nearly three-fourths of the indebtedness. On Feb. 4, 1943, Mrs. Horning filed a petition to require the trustee to surrender possession of the leased premises on the ground that he had not within sixty days from the adjudication elected to assume the lease, according to the Bankruptcy Act, 11 U.S.C. A. § 110, sub. b. The trustee by answer as-

760

serted that he had within the sixty days applied to the referee for an extension of time to elect, and was negotiating with Mrs. Horning about an adjustment of rents. She moved to strike the petition for extension of time, which motion the referee denied. The trustee then filed a petition to marshal the liens, in which he contended among other things that Mrs. Horning's acquisition of the fee title to the land was in trust for the bankrupt and its creditors. Neither of the three petitions mentioned was brought to trial. Mrs. Horning then undertook in connection with Donn to buy up the liens, and to get the trustee to obtain a racing permit and to operate the track. Nothing coming of this, Donn on Feb. 15, 1944, made the trustee a written offer to pay $100,000 in cash for a quitclaim deed to the assets. In the creditors' meeting called to consider it, an offer was made by another of $250,000 for the assets if the lease were put in good standing and the liens cleared off. This was raised to $300,000. The meeting was then adjourned for a week to investigate the offers. On reconvening Bragg made his offer of $610,000 for all the assets including the lease, with possession of the premises delivered free and clear of all liens, and claims of creditors and of the landlord (except rent accruing after delivery), all taxes and costs of administration, and of all claims in a named litigation in the State courts affecting the lease. There was a further adjournment, and Donn and Bragg each entered the lists by filing objections to the bid of the other. The creditors who are now appealing filed written objections to accepting Donn's bid. Mrs. Horning asserted that she could in any event, and would, elect to cancel the lease because of the bankruptcy, so that the trustee would have no lease to sell. The trustee made a full and careful report on what would have to be paid and done by the estate under the Bragg offer, and the uncertainty of his having any lease to deliver, and the cost of putting through the State court litigation, and he recommended acceptance of the Donn offer though it would probably not much more than pay the accumulated expenses of administration, trustee's certificates for advances, and fees yet to be fixed. The referee took the matter under advisement and on May 26, 1944, rendered an opinion in favor of the Donn offer. He did not decide whether the trustee could still assume the lease, but found a serious legal obstacle in "the bankruptcy clause" of the lease. Passing by that, the trustee would have to pay arrears of rent, $45,000 and taxes due as rent $20,000, or be evicted on three days' notice; also about $513,000 of liens in course of foreclosure, with interest to be added of about $150,000, all requiring about $700,000 in cash. Besides all this about $50,000 of trustee's certificates and advances would have to be cared for. It might be slow and expensive to wind up the State court litigation. It was plain that unsecured creditors could get nothing under either bid (and the trustee had reported his inability to get any other bids), and the secured creditors would be unaffected (these claims were in fact mostly owned by Donn and Mrs. Horning), so he concluded the Donn bid ought to be accepted. The district court on review reached the same conclusion.

It was objected that there had been no appraisal of the property to be sold under 11 U.S.C.A. § 110, sub. f. The words "It shall not be sold otherwise than subject to the approval of the court for less than 75 per cent of its appraised value" is a restriction on the power of the trustee, not of the court. The court unquestionably ought generally to appoint appraisers as the section requires before a sale of the estate, but this is for the information of the court, the creditors and bidders, where it can be of help. It is not a condition precedent to a sale. Here the personal property was slight, and its value cuts no figure. Appraisers might have valued the race track as a whole, but they could not well value a lease of it whose existence was clouded and whose value depended on legal questions more than anything else. The question before the referee and judge was not one of ordinary values, but of law and practical business judgment. Discretion was not abused in proceeding without a formal and useless appraisal.

It was also objected that the law questions about the lease ought to have been decided by litigation of the pending petitions. There was risk, as well as expense and delay in so doing. Donn's bid was limited in time. If it expired, Mrs. Horning might successfully declare the lease forfeited by bankruptcy, as she was threatening to do. The estate would then lose everything but the slight amount of personal property. The overruling of this objection was within the discretion of the court.

The district judge's ruling that the proffered proof of co-operation between the landlord and Donn would make no difference was correct. Mrs. Horning became landlord in 1938. She has co-operated for a long while with the Jockey Club and its trustee to her great loss. If she wishes now to co-operate with Donn, who is trustee for another racing association, rather than with Bragg, who is connected with a third one, she may do so, using her legal rights as landlord to that end. The problem of what if anything the trustee had to sell, and what course would most advantage the estate, which owed heavy administration costs, was one for the referee and judge. From long contact with the administration they understood it better than we can. The discretion to be exercised was theirs, not ours. But if ours, we should have decided the same way.

Judgment affirmed.